## WM. B. SMITH, TRUSTEE, *vs.* PENN AMERICAN PLATE GLASS CO.

Appeal from the Circuit Court of Baltimore City.

*Decided December 1st, 1909.*

This was an appeal from a decretal order directing the appellant to pay out of the funds in his hands the claim of the appellee, amounting to $641.27. The appellant was by deed of trust, dated May 23rd, 1908, appointed trustee for the benefit of the creditors of Henry P. Rieger. He duly accepted the trust and the Circuit Court of Baltimore City assumed jurisdiction over the trust estate. The appellee filed a petition alleging that it was a creditor of Rieger to an amount exceeding $645.00, and that he claimed to be a creditor of the Mount Olivet Cemetery Co. of the District of Columbia for a sum in the neighborhood of $2,000.00; that Rieger agreed upon a settlement of the amount due by him to the appellee for the sum of $645.00, and assigned to the petitioner his claim against the Mount Olivet Co. to that extent; that the company accepted the assignment, set aside that amount from the sum due by it to Rieger, and placed it to the credit of the appellee, who, for the convenience of one of the representatives of the Mount Olivet Co., arranged to take the money the next day; that it was not convenient for that company to deliver the money as arranged, and hence appellee did not receive it when expected. It is then alleged that some considerable time thereafter Rieger executed the deed of trust to the appellant, who, without acquainting the Court with the arrangement between Rieger and the appellee, secured an order to compromise the claim of Rieger against the Mount Olivet Company, and, by giving a bond of indemnity to it, induced that company to pay over the amount due by it to Rieger, including the $645.00. The appellant filed an answer denying that there had been an assignment by Rieger to the appellee, as alleged in the petition, and admitting that he had received $912.55 from the Mount Olivet Company in settlement of Rieger's claim.

The material facts of this case are substantially these: The Engineering Contracting Co. and Mr. Rieger were associated in the construction of a vault at Mount Olivet Cemetery, Mr. P. S. Simmons being the architect in charge. The Engineering Contracting Co. took charge of the construction and Mr. Rieger of the marble and the glass furnished by the appellee. The appellee was to furnish to Rieger the materials and he was to do the installing—was to furnish the labor, pay off the hands and was to receive ten per cent. above the installing for his trouble, in addition to his regular commissions for sales. The evidence is not very clear, as to how the contract with the Mount Olivet Co. was made—whether by Rieger alone or by him and the Engineering Co., although the latter is spoken of as a joint contractor. At any rate, the appellee gave the Mount Olivet Co. a notice of a lien it proposed to file for the balance due it by Rieger, and as the amount named was more than that company had in hand after paying the Engineering Contracting Co. it became necessary for the three parties—the Engineering Co., the appellee and Rieger—to agree upon the amounts due the two former, before the architect would allow any more money to be paid out by the Mount Olivet Company. Mr. Waldman, the representative of the Engineering Co.; Mr. Rosenthal, representing the appellee, and Mr. Rieger met in Baltimore, where it was finally agreed that the Engineering Co. should have $700.00 in full of its account and that the amount due the appellee was $641.27. The witnesses agree as to these amounts, but they differ as to whether there was an assignment by Rieger of $641.27. The amount agreed upon was paid the Engineering Co.

The testimony of Mr. Rosenthal, on the one side, and that of Mr. Rieger, on the other, is conflicting as to the extent of the agreement between them. They agree that the amount due by Rieger to the appellee was ascertained, but Rieger denies that there was an assignment, or that there was intended to be an assignment of the amount in the hands of the Mount Olivet Co. The evidence of Mr. Waldman, who was present, does not throw much light on that question. There can be no doubt that Mr. Rosenthal supposed the understanding

was that, as the result of the interview, the appellee was to be paid the $641.27 by the. Mount Olivet Co. out of the money it owed Rieger, but Rieger, on the other hand, stated very positively that he did not authorize Rosenthal to collect the money and intended to collect it himself and pay his creditors. There was, therefore, apparently, no definite understanding between them, or perhaps, to speak more accurately, there was a misunderstanding between them as to what was to be done. The fact remains that the Mount Olivet Co. did not pay the amount, and after one or two interviews between Mr. Rosenthal and the supposed representative of the Mount Olivet Co. that company refused to pay it without an order from Rieger. That was at least a reasonable demand, as the money was due Rieger by that company, and it might well hesitate to pay. out any part of it without some written authority. The intervew above spoken of was on May 1st, and as late as May 11th, 1908, Mr. Rosenthal wrote a letter to the architect as follows:

"Conformably to an adjustment reached at my office the other day with Mr. Rieger, the contractor for the Mount Olivet vault, I have agreed with the Penn-American Plate Glass Co., which furnished the glass for the vault erected under your supervision, to accept the sum of $641.27, in full and final settlement of the claim of said Penn-American Plate Glass Co., and upon payment of said sum, you can consider the entire matter, so far as the Penn-American Plate Glass Co. is considered, as settled."

That does not sustain the claim of the appellee that the representative of the Mount Olivet Co. had agreed on May 4th or 5th to send a check for that amount. Indeed, the inference to be drawn from the testimony is that it was the architect, and not an officer of the Mount Olivet Co., who, according to Mr. Rosenthal, agreed to send the check. That would not of itself be sufficient to bind the company, for all that appears from the record the architect was in charge of this work as such, and not as a representative of the company in other respects—certainly not for the purpose of settling the indebtedness between other parties.

The proof differs materially from the allegations in the petition. There is no evidence that the Mount Olivet Co. set aside from the amount due by it to Rieger the sum agreed upon, and placed it to the credit of the appellee, and there is nothing to show that the Mount Olivet Co. ever accepted the assignment, except the testimony of Mr. Rosenthal that he saw the architect when he went to Washington to get the money, who said he could not get the check because the proper official was not there to sign it, but he would send him the check. Afterwards he went again to Washington and inquired why he had not received the check when the architect said he wanted an order from Reiger. Mr. Rieger's bookkeeper testified that Mr. Rosenthal called several times to inquire whether Mr. Rieger had the check for him. She said that on the 8th or 9th of May, he was at Mr. Rieger's office and after inquiring whether Mr. Rieger had the check for him she replied he was out and she had nothing to do with it. She thus related that interview: "He asked me to take down a notation from him and have Mr. Rieger sign it that afternoon and put it in the mail, and that notice was to allow him to collect—he said $650.00 at first. I said that is not right. He said: 'What is it?' I said: '$640.00.' He said: 'All right, $640.00.' That was his claim, and that is what he wanted me to write that afternoon and have Mr. Rieger sign that afternoon and put it in the mail. Of course, it was never done. Q. Write it to him? A. Give him the authority to collect,—it was never done."

It is held that the appellee has failed to satisfactorily establish by the evidence an equitable assignment, and that it would be useless to discuss the law applicable to such questions.